IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| ZACHARY FORT, *et al.*<br>    *Plaintiffs*,<br><br>v.<br><br>MICHELLE LUJAN GRISHAM, individually and in her official capacity as the Governor of New Mexico, *et al.*,<br>    *Defendants*. | Civil Action No.1:23-cv-00778-DHU-LF<br><br>**SUPPLEMENTAL MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## MOTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs respectfully supplement their previous motion for a temporary restraining order and preliminary injunction to clarify that they continue to seek relief against the recently amended public health order which has the effect of making it unlawful to carry firearms in public parks in Bernalillo County and Albuquerque.

## BACKGROUND

Plaintiffs submit this supplemental motion in response to the Governor's withdrawal (as a result of this Court's temporary restraining order) of the initial emergency order that spurred Plaintiffs to file this case. Plaintiffs incorporate by reference the facts laid out in their initial motion. The Governor's amended emergency order is, much like its predecessor, an unconstitutional infringement of the right of law-abiding New Mexicans to bear arms in public for self-defense. Plaintiffs remain injured by the amended order which persists in making it unlawful to carry firearms for self-defense in public parks in Albuquerque and Bernalillo County. *See* Public Health Order, Ex. A, Doc. 16-1 at 2 (Oct. 2, 2023). Plaintiff Fort, who is a member of the other

1

Plaintiffs, would, if it were lawful to do so, carry a firearm in public in parks in Bernalillo County. *See* Supplemental Declaration of Zachary Fort at ¶¶ 4–5 ("Fort Decl."), attached hereto as Exhibit A. He is unable to do so because of the amended emergency order.[1]

## ARGUMENT

### I. The Revised Order's Ban on Carriage in Public Parks is Unconstitutional.

The Governor argues that the ban on carrying in public parks is justified as a restriction on carriage in " 'traditionally sensitive places,' " arguing that some " 'sensitive places' " restrictions are *per se* valid under the Second Amendment so that this "Court is not required to engage in historical analysis pertaining to regulation on firearms." Defs.' Resp. in Opp'n for TRO, Doc. 16 at 15 (Oct. 2, 2023) ("Defs.' Resp."). That is not true. In fact, as the phrase "traditionally sensitive places" indicates, "sensitive places" are not an *exception* to *Bruen*'s exacting historical analysis, but an *application* of it. *New York State Rifle & Pistol Ass'n, Inc. v. Bruen* used "sensitive places" as an example of historical restrictions that inform our understanding of the right, explaining that there were historical laws forbidding the carrying of firearms in three specific "sensitive places"— "legislative assemblies, polling places and courthouses"—and from these it instructed lower courts to "use analogies to *those historical regulations* of 'sensitive places' to determine" whether carry prohibitions "in *new* and analogous sensitive places are constitutionally permissible." 142 S. Ct. 2111, 2133 (2022) (first emphasis added). While *Bruen* mentions *Heller*'s discussion of "schools and government buildings," the only historical restrictions it endorses for use in analogical

---

[1] As the Court knows, when Plaintiffs filed their complaint, the restrictions in force were broader. Plaintiffs believe that their initial complaint's allegation that the original order "violates Plaintiffs['] clearly established constitutional rights because they prohibit Plaintiffs from carrying firearms in public for self-defense as they are entitled to do under the Second Amendment" fairly encompass the claim (under the amended order) that the ban on carrying firearms in public parks is unconstitutional. Complaint, Doc. 1 ¶35 (Sept. 11, 2023). To the extent that this Court disagrees, Plaintiffs can amend or supplement their complaint.

reasoning under *Bruen*'s historical inquiry were limited to those three locations. *Id.* (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).

Accordingly, the Governor bears the burden of proving the amended order's restrictions on public parks is valid by reference to these historical restrictions, which involves proving that the amended order's ban is consistent with those historical laws. *See id.* at 2135. She has failed to do so. First, the Governor argues that places where "children are frequently present in large numbers" qualify as "sensitive places." Defs.' Resp. at 15.² But the presence of children is not what has historically converted a location into a "sensitive place." Children are present in many places, including the home, where their parents have an undoubted right to keep and carry firearms "for defense of self, family, and property." *Heller*, 554 U.S. at 628. None of the sensitive places listed as historically recognized in *Bruen* are notable for having children; if anything, the opposite is true of legislative assemblies, polling places, and courthouses.

Neither is the common thread of these sensitive places "where large numbers of people engaged in recreation." Defs.' Resp. at 17 (quoting *Md. Shall Issue, Inc. v. Montgomery Cnty.*, No. TDC-21-1736, 2023 WL 4373260 at *10 (D. Md. July 6, 2023) ("*MSI*")). Their defining feature was they were locations where the state provided comprehensive security that rendered the need for armed self-defense unnecessary. To draw a valid analogy to "those historical restrictions," therefore, the State must show that parks today provide a similar level of security, which today equates to controlled entry with metal detectors. *See* Br. for the Ctr. for Human Liberty as *Amicus Curiae* at 9–17, *Antonyuk v. Hochul*, No. 22-2908(2d Cir. Feb. 8, 2023), ECF No. 248. It has not attempted to do so, because it is obvious that they do not.

---

² The Governor makes this argument specifically with reference to playgrounds, not parks. Plaintiffs do not challenge the restriction insofar as it applies to *playgrounds* as distinct from *parks*. But because the same argument could be made for parks, Plaintiffs address it here.

Instead, the Governor has hung her hat on a recent District of Maryland case that upheld restrictions on carrying in public parks based on that court's conclusion that "numerous historical statutes and ordinances from the time period before and following the ratification of the *Fourteenth Amendment* imposed such restrictions in relation to parks." Defs.' Resp. at 17 (quoting *MSI*, 2023 WL 4373260 at *11). But the court in Maryland focused on the wrong time period for its analysis. The relevant time period for determining the meaning of the Second Amendment is the Founding era, and "late-19th-century evidence cannot provide much insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Bruen*, 142 S. Ct. at 2154; *see also id.* at 2137 ("[W]e have generally assumed that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791."). The Governor is wrong to treat the issue as "open," Defs.' Resp. at 17 n.10, and wrong to adopt *MSI*'s focus on the latter period. *See* Mark W. Smith, *"Not All History Is Created Equal": In the Post-*Bruen *World, the Critical Period for Historical Analogues Is When the Second Amendment Was Ratified in 1791, and Not 1868*, Harv. J. of L. & Pub. Pol'y Per Curiam (Oct. 1, 2022), https://bit.ly/3CMSKjw.

In fact, *MSI* is an outlier. In *Antonyuk v. Hochul*, the district court, looking to the same laws that *MSI* analyzed, concluded they were insufficient to "constitute a tradition that was *representative* of the Nation" because, even at the late date when they began appearing, such laws applied to a small minority of Americans. 639 F. Supp. 3d 232, 326 (N.D.N.Y. 2022). In *Koons v. Platkin*, the court noted that "the State has failed to come forward with any laws from the 18th century that prohibited firearms in areas that today would be considered parks." --- F. Supp. 3d ----, 2023 WL 3478604, at *83 (D.N.J. May 16, 2023). As for later laws, the Court found that, in addition to coming too late, many were directed not at protecting parkgoers from violence but at

4

protecting game from hunters. *Id.* at *84. Mindful that later history cannot contradict earlier history, it held that "those laws arising in the mid- to late-19th century do not establish a historical tradition of banning firearms at parks especially since the modern equivalent of parks existed during the nation's founding." *Id.* at *85. And *Wolford*, which the Governor acknowledges on this point, *see* Defs.' Resp. at 17 n.10, was decided after *MSI* and rejected its reasoning, siding instead with *Antonyuk* and *Koons*, noting that "[o]ut of the seventeen laws the [*MSI*] court reviewed, only one local ordinance was enacted before the Fourteenth Amendment's ratification and only one state law was enacted 'during' the time of the Fourteenth Amendment's ratification" so, even looking at the later period as relevant, the Court was not convinced "that there was a national historical tradition of prohibiting the carrying of firearms in parks at the time of the Fourteenth Amendment's ratification." *Wolford v. Lopez*, --- F. Supp. 3d ----, 2023 WL 5043805, at *24 (D. Haw. Aug. 8, 2023).

**II. The Other Injunction Factors Also Favor Plaintiffs.**

As Plaintiffs explained in their initial brief in favor of a temporary restraining order or preliminary injunction, the other injunction factors follow naturally from the finding that Plaintiffs' rights are being infringed. The Governor argues that because there is an Albuquerque ordinance that the city has interpreted to carry firearms, among other places, in Albuquerque neighborhood parks, Plaintiffs cannot show irreparable harm since there is an independent bar to carrying in parks in Albuquerque. Defs.' Resp. at 14. However, Plaintiff Fort wishes to carry firearms in parks in Bernalillo County that lie outside the city limits (and to which the ordinance does not apply). *See* Fort Decl. at ¶¶ 4–5. That injury *can* be immediately redressed by this Court.

## CONCLUSION

For these reasons, and those contained in Plaintiffs' initial motion, the Court should enter a preliminary injunction against enforcement of the unconstitutional amended order.

Respectfully Submitted,

**ARAGON MOSS
GEORGE JENKINS, LLP**


By:     <u>*/s/ Jordon P. George*</u>
      Jordon P. George
      2201 Menaul Blvd NE
      Albuquerque, NM 87107
      (505) 872-3022
      (505) 214-5317 (facsimile)
      jordon@amgjlaw.com

*Attorneys for Plaintiffs*